**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**MAR 2 2005**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

---

JIMMIE C. MARTIN,

      Plaintiff-Appellant,

v.

JO ANNE B. BARNHART,
Commissioner, Social Security
Administration,

      Defendant-Appellee.

No. 03-7113
(D.C. No. 02-CV-522-P)
(E.D. Okla.)

---

**ORDER AND JUDGMENT** *

---

Before **HARTZ** , **McKAY** , and **PORFILIO** , Circuit Judges.

---

After examining the briefs and appellate record, this panel has determined

unanimously to grant the parties' request for a decision on the briefs without oral

argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore

ordered submitted without oral argument.

---

*    This order and judgment is not binding precedent, except under the
doctrines of law of the case, res judicata, and collateral estoppel. The court
generally disfavors the citation of orders and judgments; nevertheless, an order
and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

Jimmie C. Martin seeks review of the denial of his application for Social Security disability benefits. We exercise jurisdiction under 28 U.S.C. § 1291 and 42 U.S.C. § 405(g), and we reverse.

**Background**

Mr. Martin alleges disability as of February 8, 1998, based on osteoarthritis (causing pains in his knees, hands, elbows, and back), hypertension, depression, and congestive heart failure (with chest pains and shortness of breath). The medical evidence reflects that Mr. Martin has also been treated for allergies, alcohol abuse, sleeplessness, and fatigue.

In November of 1998, the Commissioner ordered psychological and physical consultive examinations. At the physical examination, conducted by Dr. Jonathan Scott Clark, Mr. Martin reported stiffness and pain in his hands and especially his knees. Mr. Martin stated that, at times, he would "get down" and be "unable to get up due to [knee] pain." Aplt. App., Vol. II at 228. Mr. Martin also had occasional chest pain associated with being tired or fatigued. Dr. Clark noted stiffness and "minimal decreased range of motion with flexion of the lumbar spine, as well as hip flexion with the knees extended." *Id.* at 229. He assessed Mr. Martin as having congestive heart failure, hypertension, chest pain, and "osteoarthritis affecting the knees as well as hands." *Id.* Dr. Clark did not

fill out a Residual Functional Capacity (RFC) assessment form, or provide an opinion on Mr. Martin's ability to work.

Based on the treating and examining physicians' records, an agency physician completed an RFC assessment form, determining that Mr. Martin had some exertional limitations and a postural limitation allowing occasional, but not frequent, stooping. [1] An ALJ held a hearing at which Mr. Martin and a vocational expert (VE) testified. Mr. Martin testified that he was fifty-eight years old and that his past relevant jobs were hog farmer and industrial radiographer X-ray technician. The VE testified that Mr. Martin's former positions were heavy, skilled work, and that they did not provide any transferable skills to sedentary or light occupations. In response to the ALJ's questions, the VE generally described existing unskilled medium-level jobs and further noted that, in performing unskilled medium-level work, an individual would spend "one-third to more than two-thirds of the day [doing] repetitive lifting, and bending, and stooping." *Id.* at 58. Also, the VE stated that with a history of back stiffness, there was "vocational concern" about an individual's ability to lift, bend, and stoop throughout an eight-hour work day. *Id.*

---

[1]    "'Occasionally' means occurring from very little up to one-third of the time." S.S.R. 83-10, 1983 WL 31251, *5. "'Frequent' means occurring from one-third to two-thirds of the time." *Id.* at *6.

Ultimately, the ALJ determined that Mr. Martin could no longer perform his past relevant work, but could perform the full range of medium work. As a consequence, the ALJ concluded that Mr. Martin was not under a disability as defined in the Social Security Act and not entitled to benefits. *See Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988) (discussing the sequential process for evaluating eligibility for disability benefits). The ALJ's determination, which became the final decision of the Commissioner, was upheld upon judicial review by the district court. This appeal followed.

**Discussion**

On appeal, Mr. Martin argues that substantial evidence does not support the ALJ's determination of an RFC for a full range of medium work. Our standard of review is well established.

> We review the agency's decision to determine whether the factual findings are supported by substantial evidence in the record and whether the correct legal standards were applied. Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. However, [a] decision is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it. . . . [B]ecause our review is based on the record taken as a whole, we will meticulously examine the record in order to determine if the evidence supporting the agency's decision is substantial, taking into account whatever in the record fairly detracts from its weight. However, [w]e may neither reweigh the evidence nor substitute our discretion for that of the [Commissioner].

*Hamlin v. Barnhart*, 365 F.3d 1208, 1214 (10th Cir. 2004) (quotations omitted).

In finding that a "State Agency medical consultant concluded that, in spite of his impairments, [Mr. Martin] can still carry out a full range of medium work activity," Aplt. App., Vol. II at 23, the ALJ misinterpreted the record. Under social security rules, an individual capable of the full range of medium work must be able to perform "frequent bending-stooping." S.S.R. 83-10, 1983 WL 31251, at *6. This movement requires "[f]lexibility of the knees as well as the torso." *Id.* Here, the only RFC assessment in the record was prepared by a state medical consultant. That assessment, however, indicates that Mr. Martin is unable to engage in frequent stooping. Additionally, Mr. Martin's treating and consulting physicians have observed his knee difficulties and minimally decreased range of motion in his spine due to stiffness.

"[T]he ALJ [is] responsible in every case 'to ensure that an adequate record is developed during the disability hearing consistent with the issues raised.'" *Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997) (quoting *Henrie v. United States Dep't of Health & Human Servs*., 13 F.3d 359, 260-61 (10th Cir. 1993)). An ALJ need not "exhaust every possible line of inquiry," but he must fully and fairly develop the record as to material issues. *Id*. at 1168. In this case, the question of whether Mr. Martin could perform the frequent stooping necessary for performance of the full range of medium work was a material issue. Mr. Martin's testimony, his osteoarthritis diagnosis, and the reviewing physician's

RFC determination that claimant could stoop only occasionally makes the need for further development of the issue "clearly established in the record." *Id*. At present, the record lacks substantial evidence that Mr. Martin is capable of performing the stooping necessary for a full range of medium work.

We note that another aspect of the ALJ's discussion of the evidence is also at odds with the record. The ALJ's statement that "[t]he undersigned agrees with the testimony of the vocational expert and finds the claimant has transferable skills," Aplt. App., Vol. II at 24, is inconsistent with the transcription of the VE's testimony. The VE testified that Mr. Martin's prior jobs were "rather unique occupations" which "would not afford him any specific transferable skills to sedentary or light occupations." *Id.* at 56. There is no VE testimony on skills transferable to medium work. *Id.* at 56-58.

Additionally, the ALJ's decision incorrectly states that the VE's examples of occupations that Mr. Martin could perform given his "age, education, past work experience, and residual functional capacity" included "grocery sacker, factory worker, hand packer and farm laborer– *each of which*, the expert testified, represents 422,000 jobs regionally and 4.2 million nationwide." *Id.* at 24 (emphasis added). In fact, the VE provided the listed jobs as examples of unskilled positions that could be performed by an individual of advanced age with an RFC for medium work. *Id.* at 57. The VE then testified that, in general,

"unskilled medium level jobs account for approximately 422,000 positions in the region, and over 4.2 million in the national economy." *Id*. He did not state that the examples, even taken together, accounted for those job numbers. Thus, the VE's testimony does not support the inflated numbers of existing medium-work positions cited in the ALJ's decision. And the VE's testimony cannot be used as a basis for appellee's argument that we should affirm because, under the *Dictionary of Occupational Titles* descriptions, Mr. Martin could perform the positions of hand packager and one type of factory laborer even with stooping restrictions. Aplee Br. at 11-12. This contention ignores the absence of evidence that such jobs exist in significant numbers in the regional and national economy.

The judgment of the district court is REVERSED, and the case is REMANDED with directions to REMAND to the agency for further development and findings consistent with the law and evidence.

Entered for the Court


Monroe G. McKay
Circuit Judge
